Argued and submitted December 15, 2010, reversed and remanded September 8, 2011, petition for review denied March 8, 2012 (351 Or 649)

Beth A. PROCTOR,
an individual;
and Diane E. RULIEN, P. C.,
an Oregon professional corporation,
*Plaintiffs-Appellants,*

*v.*

CITY OF PORTLAND,
an Oregon municipal corporation,
*Defendant-Respondent.*

Multnomah County Circuit Court
090405208; A144782

263 P3d 1099

Michael T. Garone argued the cause for appellants. With him on the briefs were Steve C. Morasch, Jill S. Gelineau, and Schwabe, Williamson & Wyatt, P.C.

Kenneth A. McGair argued the cause for respondent. On the brief was Shane E. Abma.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Duncan, Judge.

HASELTON, P. J.

.

## HASELTON, P. J.

Plaintiffs, real estate brokers who sought damages and declaratory relief pertaining to the enforcement of defendant City of Portland's 2008-amended Business License Law, appeal. They challenge the trial court's allowance of the city's motion for partial summary judgment and its denial of their cross-motion for partial summary judgment. In so ruling, the trial court determined that, as amended, Chapter 7.02 of the Portland City Code (PCC) does not impose a "business license tax" within the meaning of ORS 701.015(6)(a) and, thus, can be applied to plaintiffs notwithstanding ORS 696.365. As explained below, we conclude that, notwithstanding the 2008 revisions, the city's Business License Law continues to retain the essential features of a "business license tax" as understood by the 1987 legislature in enacting ORS 696.365 and ORS 701.015(6)(a). Accordingly, we reverse and remand.

For purposes of our review, the operative circumstances are undisputed. Plaintiffs are licensed real estate brokers who, in 2008, worked under the supervision of principal real estate brokers. Between 1987 and 2008, the city did not impose its then-existing income-based business "license fee" on persons in plaintiffs' positions. That was so because of the conjunction of two statutes, both enacted in 1987. First, ORS 696.365 provides:

"(1)   A city or county may not impose a business license tax on or collect a business license tax from an individual licensed as a real estate broker who engages in professional real estate activity only as an agent of a principal real estate broker.

"(2)   As used in this section, 'business license tax' has the meaning given that term in ORS 701.015."

Second, ORS 701.015(6)(a) provides:

" 'Business license tax' means any fee paid by a person to a city or county for any form of license that is required by the city or county in order to conduct business in that city or county. The term does not include any franchise fee or privilege tax imposed by a city upon a public utility under ORS 221.420 or 221.450 or any provision of a city charter."

Following the enactment of those statutes, the city understood that the business "license fee" imposed by its then-existing Business License Law was a "business license tax" within the meaning of ORS 701.015(6)(a) and, thus, under ORS 696.365, could not be imposed on real estate brokers who worked under the supervision of principal real estate brokers.

In 1987—indeed, as we understand it, between 1975, when the modern iteration of the city's Business License Law became effective, and 2008,[1] when the city adopted the revisions triggering this litigation—the city's Business License Law provided that "[n]o person shall do business within the City unless such person shall have first paid a license fee * * * and obtained a license under the Business License Law." PCC 7.02.300 (1993). In general terms, to apply for a license or renew a license, an applicant was required to pay a minimum "fee" and an additional amount, which was calculated based on a percentage of net income. PCC 7.02.500 - 7.02.545 (1993). The license term would then extend from the first day of the month in which the license was "issued or was required to have been obtained" until the end of the licensee's applicable tax year. PCC 7.02.350 (1993). If the person failed to apply for a license or failed to pay their license fee when due, the person would be assessed interest and penalties, based on the amount of the fee owing and the length of time the fee remained overdue. PCC 7.02.700 (1993); PCC 7.02.710 (1993).

In 2008, as noted, the city revised its Business License Law. *See* City of Portland Ordinance No. 182137 (effective Sept 19, 2008).[2] Among other things, the city made

---

[1] The appellate record does not contain the version of the city's Business License Law that was in existence in 1987. Rather, the record contains a copy of the 1975 law, enacted by City of Portland Ordinance No. 139106 (effective Jan 1, 1975), and a 1993 version, enacted by City of Portland Ordinance No. 166676 (effective June 24, 1993). However, in most respects, the general operation of the law appears to have remained constant between the 1975 and 1993 versions, and the parties treat the 1993 version as representative of the city's Business License Law prior to the 2008 amendments. We do the same.

[2] The city amended various provisions of its Business License Law after it adopted City of Portland Ordinance No. 182137 and after plaintiffs filed their complaint in this case. *See* City of Portland Ordinance Nos. 183330 (effective Dec 12, 2009), 183727 (effective May 28, 2010), and 184597 (effective June 17, 2011). Those amendments have no effect on our analysis.

changes to the terminology used in the law, *e.g.*, substituting the term "tax" for "fee" and the term "Certificate of Compliance" for "license," *see* PCC 7.02.100 (2008), and more substantive changes, such as adding a new requirement that a business "register" with the city within 60 days of starting business, *see* PCC 7.02.300 (2008). For purposes of this case, the most significant change was the elimination of the requirement in the preexisting code that a person pay a fee and obtain a license *before* that person was permitted to "do business within the City." *See* PCC 7.02.300 (2008).

After the city adopted the 2008 amendments, it sent plaintiffs notice that their 2008 income was subject to taxation under the revised Business License Law. Plaintiffs then brought this action, seeking declaratory relief and damages. As noted, the parties filed cross-motions for partial summary judgment. Plaintiffs asserted, *inter alia*, that, notwithstanding the 2008 revisions to the Business License Law, the city's income-based "business tax" remains, in substance and effect, a "business license tax" within the meaning of ORS 701.015(6)(a), to which, under ORS 696.365, they cannot be subject. The city remonstrated that the elimination of the requirement that a business obtain a license before conducting business in the city constitutes a substantive change, removing the code, as revised, from the purview of ORS 701.015(6)(a)—and, by extension, from the proscription of ORS 696.365. In particular, the city argued that, as a result of that change, the Business License Law imposes a "pure business income tax," as opposed to a "business license tax" within the meaning of ORS 701.015(6)(a).

The trial court concluded that "the City's Business License Law, Portland City Code 7.02 *et seq.*, is not a 'business license tax' as that term is defined in ORS 701.015(6)(a)." Accordingly, the trial court denied plaintiffs' motion for partial summary judgment and granted the city's cross-motion.

On appeal, the parties essentially reprise their arguments before the trial court.

Thus, resolution of this dispute, as framed by the parties, ultimately depends on the meaning of the term "business license tax" in ORS 701.015(6)(a). That is so because,

given that it is undisputed that the pre-2008 PCC provision *did* impose a "business license tax" that could not be imposed on brokers in plaintiffs' position, the purported materiality of the 2008 PCC revisions must be assessed in relation to the 1987 legislature's intent in codifying and defining that term.

That inquiry, in turn, implicates the now-familiar template for statutory construction set out in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993), and *State v. Gaines*, 346 Or 160, 206 P3d 1042 (2009). We turn, thus, to the text, context, and relevant legislative history of that statute, with the goal of discerning what the legislature intended by that term. Relevant context includes other provisions in ORS 701.015 as well as other provisions of the bill enacting ORS 701.015. *See State v. Ortiz*, 202 Or App 695, 698, 124 P3d 611 (2005).

As previously noted, ORS 701.015(6)(a) defines "business license tax" as follows:

" 'Business license tax' means any fee paid by a person to a city or county for any form of license that is required by the city or county in order to conduct business in that city or county. The term does not include any franchise fee or privilege tax imposed by a city upon a public utility under ORS 221.420 or 221.450 or any provision of a city charter."

The meaning of "business license tax" in ORS 701.015(6)(a) is inextricably intertwined with the use of that term not only in other provisions of ORS 701.015, but also in two other statutes that, with ORS 701.015, were concurrently enacted in 1987 as part of House Bill 2218: ORS 696.365 and ORS 701.020. The content and function of each informs the others.

In overarching terms, HB 2218 encompassed the legislature's efforts to (a) address two related, but distinct, issues pertaining to the imposition of local business license taxes and (b) ameliorate the City of Portland's unique concerns about the fiscal/revenue implications of such legislation. The first substantive issue—which was addressed in the provisions ultimately enacted as ORS 701.015—related to the imposition of business license taxes on building contractors. The second issue—which was ultimately addressed in ORS 696.365—related to the imposition of business license

taxes on real estate broker-agents. Finally, those portions of HB 2218 that were ultimately enacted as ORS 701.020 embodied the legislature's efforts to address Portland's concerns regarding the potential implications of ORS 701.015 with respect to the city's revenues. With that general framework as a backdrop, we recount, in some detail, the evolution of each of those provisions, which, collectively, illuminate the 1987 legislature's understanding of "business license tax."

The first and primary focus of HB 2218 was to alleviate the burden experienced by small building contractors and subcontractors who worked in multiple municipalities, each of which imposed a separate business license tax on people who conducted business within its jurisdiction. The principal complaint of the contractors and subcontractors was that the cumulative burden of those business license taxes made the cost of doing small jobs in separate jurisdictions prohibitive. That concern was especially acute for building contractors who worked in the Portland metropolitan/ tri-county area, where it was common to have projects in a number of individual cities and counties, each of which imposed separate business licensing taxes. *See, e.g.*, Testimony, House Committee on Intergovernmental Affairs, HB 2218, Feb 10, 1987, Ex B (statement of Charles Hales, Director of Governmental Affairs for Home Builders Association of Metropolitan Portland).

Ultimately, in those provisions enacted and codified as ORS 701.015 (1987), the legislature settled on creating a "passport" system whereby contractors working in the Portland metropolitan area could obtain a business license from a "metropolitan service district," that is, Metro. The Metro business license entitled its holder to a waiver from the business license taxes imposed by cities within Metro unless the particular city imposing the business license taxes was the contractor's principal place of business or the contractor earned a certain amount of income from work in that city in a given license year. ORS 701.015(1) - (3) (1987).

Thus, ORS 701.015 (1987), in relevant part, provided:

"(1)   When an office of a builder who is registered under ORS 701.055 is located in a city within the boundaries of a metropolitan service district organized under ORS chapter 268 or when the builder derives gross receipts of $100,000 or more from business conducted within the boundaries of a city during the calendar year for which the business license tax is owed, the builder is required to pay the business license tax, if any, imposed by the city.

"(2)   If a builder described in subsection (1) of this section conducts business during any year in any city or jurisdiction within the boundaries of the metropolitan service district other than a city to which the builder has paid a business license tax for that year, the builder may apply for a business license from the metropolitan service district.

"(3)   When a builder obtains a business license from the metropolitan service district under subsection (2) of this section, if a city within the boundaries of the metropolitan service district and in which the builder does not have an office demands payment of a business license tax by the builder, the city shall waive such payment upon presentation of proof by the builder that the builder has a business license issued by the metropolitan service district. Possession by the builder of a current business license issued by the metropolitan service district under subsection (2) of this section shall be proof sufficient to obtain the waiver described in this subsection.

"* * * * *

"(6)(a)   [Defining business license tax]."

The operative definition of "business license tax," set out above, *see* 245 Or App at 383, has not changed since 1987.[3]

As noted, the second substantive focus of HB 2218 pertained to complaints by real estate brokers who worked as agents of principal real estate brokers. Although real estate brokers, like building contractors, regularly conducted business in multiple municipalities, their principal objection to the business license tax was different. The crux of their complaint was that the imposition of business license taxes on

---

[3] The legislature has subsequently amended other aspects of ORS 701.015 numerous times. *See* Or Laws 1989, ch 1064, §§ 1, 2; Or Laws 1991, ch 79, § 2; Or Laws 1999, ch 176, § 1; Or Laws 2007, ch 541, § 44. However, for purposes of our analysis, the substantive operation of the statute remains the same.

agents was unfair because, although they were classified as independent contractors for state and federal income tax purposes, they were treated as employees of principal real estate brokers under the state's governing statutory scheme. Testimony, House Committee on Intergovernmental Affairs, HB 2218, Feb 10, 1987, Ex D (written testimony of Brad Morris, Governmental Affairs Director, Oregon Association of Realtors).

The real estate brokers argued that, because Oregon statutes required them to work under the supervision and direction of principal real estate brokers, they should not have to pay business license taxes intended to apply to independently operating businesses. *Id.* Although the brokers focused their complaints on Portland, which had then just recently started to enforce its Business License Law against agents due to their classification as independent contractors under the state and federal tax laws, *id.*, the 1987 legislature ultimately exempted real estate brokers from the imposition of all "business license taxes" statewide.

That exemption was embodied in ORS 696.365 (1987), which provided:

"(1)   A city or county shall not impose or collect a business license tax from a person licensed as a real estate salesperson or associate real estate broker who engages in professional real estate activity only as an agent of a real estate broker or real estate organization.

"(2)   As used in this section, 'business license tax' has the meaning given that term in ORS 701.015."[4]

The third essential component of HB 2218 was crafted and enacted in response to concerns raised by

---

[4] ORS 696.365 has been amended several times since 1987. *See* Or Laws 2001, ch 300, § 78; Or Laws 2007, ch 319, § 12. As relevant here, under the 1987 system, supervisory-level real estate professionals were called "real estate brokers." *See former* ORS 696.025(1) (1987), *repealed by* Or Laws 2001, ch 300, § 84. Lower-level real estate professionals were called "associate real estate brokers" and "real estate salespersons." *See former* ORS 696.025(4), (6) (1987), *repealed by* Or Laws 2001, ch 300, § 84. In 2001, the nomenclature changed. *See* Or Laws 2001, ch 300, § 78. Supervisory-level real estate professionals are now called "principal real estate brokers," ORS 696.010(14), and the lower-level agents are called "real estate brokers," ORS 696.010(17). For ease of reference, we use the terminology of the present licensing scheme.

Portland about the fiscal impact of the "passport" licensing provisions ultimately enacted as ORS 701.015 (1987). In particular, the city contended that those provisions, if applied to Portland, could have deleterious effects on the operation of, and revenues generated by, the city's unique business licensing scheme. *See, e.g.*, Tape Recording, House Committee on Intergovernmental Affairs, HB 2218, Feb 17, 1987, Tape 34, Side B (statements of Chairman Al Young and Marge Kafoury, Director of Intergovernmental Affairs, City of Portland). Accordingly, the legislature adopted a "carve-out" designed to keep the city's particular business licensing scheme and revenues intact by exempting the city from participation in the "passport" system created for building contractors working in the surrounding tri-county area. *See, e.g.*, Tape Recording, Senate Committee on Government Operations and Elections, HB 2218, June 12, 1987, Tape 170, Side B (statements of Sen Frank Roberts in moving to adopt the city's proposed amendments to HB 2218). That exemption was enacted as ORS 701.020, which provides:

"(1)   A city that imposes a business license tax based on or measured by adjusted net income earned by conducting business within the city shall be exempt from ORS 701.015.

"(2)   As used in this section, 'business license tax' has the meaning given that term in ORS 701.015."

Central to the 1987 legislature's consideration of, and response to, Portland's expressed concerns was its understanding of the operation of the city's licensing scheme as a revenue-raising mechanism. In testimony before the House Committee on Intergovernmental Affairs and the Senate Committee on Government Operations and Elections, representatives of the city highlighted three aspects of the city's then-existing Business License Law that are most pertinent to the present dispute.

*First*, and most significantly, witnesses emphasized that the city's business licensing scheme was unique in Oregon because, unlike most jurisdictions—which imposed a flat fee or a fee based on a business's number of employees—the city's business license tax was based on the business's adjusted net income. *See, e.g.*, Tape Recording, Senate Committee on Government Operations and Elections, HB

2218, May 27, 1987, Tape 139, Side B (statement of Marge Kafoury, City of Portland) ("[O]ur business license system is unique to the State of Oregon and * * * is a net-income based system.").[5] Specifically, representatives from the city explained that, although (a) any business earning a gross, annual income of over $2,500 was required to pay a minimum fee of $25 for a business license,[6] (b) if the business's total taxable net income was over $5,000, then the business would be required to pay an additional amount, which was then equal to 2.2 percent of 25 percent of the business's adjusted net income earned in the city for that license year. Tape Recording, House Committee on Intergovernmental Affairs, HB 2218, Feb 17, 1987, Tape 34, Side B (statement of City of Portland Mayor, Bud Clark).[7] Thus, except for the flat minimum fee applicable to only very small businesses, amounts assessed under the city's Business License Law were, as of 1987, predicated on a business's adjusted net income.

Indeed, repeatedly in the testimony before the 1987 legislature, city representatives explained that the Business License Law, and specifically its "fee" provision, was a revenue-raising device. The city emphasized that, unlike some cities, which used their business license requirements to regulate the businesses operating within their jurisdictions, "Portland's Business License is purely for purposes of revenue. * * * It does not attempt to regulate the business operations of licensees in any way." Testimony, House Committee on Intergovernmental Affairs, HB 2218, Feb 17, 1987, Ex J (written testimony of Dennis Nelson, City of Portland).[8]

[5] *See also* Tape Recording, Senate Committee on Government Operations and Elections, HB 2218, June 12, 1987, Tape 171, Side A (statement of Marge Kafoury, City of Portland) ("First of all, I want to make the point that our business license program is unique and shares none of the characteristics of the other systems in the metro area. Portland's business license program is a net-income based system.").

[6] Testimony, House Committee on Intergovernmental Affairs, HB 2218, Feb 17, 1987, Ex J (written testimony of Dennis Nelson, Business Licenses Manager, City of Portland).

[7] *See also* Tape Recording, Senate Committee on Government Operations and Elections, HB 2218, June 12, 1987, Tape 171, Side A (statement of Marge Kafoury, City of Portland).

[8] City representatives told the legislature that, when the city adopted its Business License Law in 1975, it was designed to follow the same rules and regulations used by the State of Oregon's Department of Revenue for the taxation of income.

*Second*, city representatives explained, the city's Business License Law was "retroactive, * * * not prospective." Tape Recording, House Committee on Intergovernmental Affairs, HB 2218, Mar 19, 1987, Tape 69, Side B (statement of Marge Kafoury, City of Portland). Thus, although a licensee was required to pay an amount for a business license when they renewed their license at the beginning of the year or first obtained a license, the final accounting of what a licensee owed would ultimately be determined at year end, when the amount of a licensee's adjusted net income for the preceding year was known. Tape Recording, House Committee on Intergovernmental Affairs, HB 2218, Mar 19, 1987, Tape 69, Side B (discussion between Reps George Trahern and Gene Sayler and City of Portland representatives Marge Kafoury, Paul Elsner, and Dennis Nelson).

*Third*, if a business failed to timely renew its business license, the sanction was neither exclusion/preclusion from doing business in Portland nor prosecution for a crime.[9] Rather—and consistently with the city's representation that its licensing scheme "does not attempt to regulate [licensees'] business operations"[10]—the nonlicensed business was subject only to a financial penalty and interest, calculated with reference to what the business would need to pay to renew its expired license. Tape Recording, House Committee on Intergovernmental Affairs, HB 2218, Feb 17, 1987, Tape 34, Side B (statement of Dennis Nelson, City of Portland) ("There are penalties assessed and interest for late filing * * *

---

*See, e.g.*, Tape Recording, Senate Committee on Government Operations and Elections, HB 2218, May 27, 1987, Tape 139, Side A (statement of Dennis Nelson, City of Portland) ("The City of Portland's business license fee is income-based and is tied directly to the state revenue code. We didn't make up new rules, we simply, whatever the state does, we do.").

[9] Apparently, in 1975, a person could face criminal penalties if he or she conducted business in the city without first obtaining a license. City of Portland Ordinance No. 139106 (PCC 7.10.030). By 1993, however, it appears that the threat of criminal prosecution was eliminated. Our record does not disclose when that change was made, much less whether the threat of criminal prosecution existed in 1987. However, and most importantly, in our review of the 1987 legislative history of the provisions at issue in this case, the city never suggested that criminal prosecution was a possible consequence for operating a business without a license within city limits—much less that it was a fundamental feature of the city's licensing scheme.

[10] Testimony, House Committee on Intergovernmental Affairs, HB 2218, Feb 17, 1987, Ex J (written testimony of Dennis Nelson, City of Portland).

[s]imilar I would say to what it would be if you paid your state taxes late, a percentage penalty.").

Consistently with the city's representations of how its Business License Law operated, the members of the 1987 legislature understood that the city's business "license fee" imposed under its Business License Law was, for all practical purposes, a tax on adjusted net income. *See, e.g.*, Tape Recording, House Committee on Intergovernmental Affairs, HB 2218, Feb 17, 1987, Tape 34, Side B (statement of Rep Ron Cease) ("[I]n Portland's case, the tax, other than the minimum, I guess the minimum too, is really a net, it's a net tax on income—a tax on that income."); Tape Recording, House Committee on Intergovernmental Affairs, HB 2218, Mar 19, 1987, Tape 69, Side B (statement of Rep Bill Dwyer) ("I really don't see this as a business tax license. I see it as an income tax, the way the City of Portland does it. *You may call it a business license if you want, but I just call it another income tax * * *.*" (Emphasis added.)); Tape Recording, Senate Committee on Government Operations and Elections, June 12, 1987, Tape 171, Side A (statement of Sen Eugene Timms) ("Portland * * * is unique * * *. Portland has a separate system that's on a net basis.").

To summarize, in enacting ORS 701.020, the 1987 legislature intended to exempt the city—with its unique income-based business license tax—from the operation of the contractor "passport" provisions of ORS 701.015. In doing so, however, the legislature also explicitly provided that a "business license tax" included a scheme (like Portland's) that imposed an assessment based on business net income. *See* ORS 701.020 (excluding from the operation of ORS 701.015 "a business license tax based on or measured by adjusted net income earned by conducting business within the city"). Finally, in concurrently enacting ORS 696.365, the 1987 legislature did not exclude Portland from its purview. *See, e.g.*, Tape Recording, House Committee on Intergovernmental Affairs, Conference Committee, HB 2218, June 24, 1987, Tape 1, Side A (statements of Brad Morris, Oregon Association of Realtors). Rather, *any* city with a business license tax—including (by necessary implication) a city whose business license tax is "based on or measured by adjusted net income earned by conducting business within the city," ORS

701.020—was prohibited from imposing that tax against real estate brokers who worked as agents of principal real estate brokers.

It is patent that, under ORS 696.365, Portland was prohibited in 1987 and thereafter from subjecting real estate broker-agents from assessments under its Business License Law. And Portland, understanding that flat prohibition, did not do so—until 2008. Thus, the issue reduces to whether the 2008 PCC revisions so materially altered the operation and effect of the "fee" (now "tax") provisions of the Business License Law as to render them no longer subject to ORS 696.365. The touchstone of materiality is the 1987 legislature's understanding of the fundamental nature of the Business License Law's "fee" provisions.

We conclude that the 2008 revisions are immaterial relative to the application of ORS 696.365. As exhaustively chronicled, the 1987 legislature understood (as it had been repeatedly informed by the city's representatives) that *the* essential feature of Portland's licensing scheme was the imposition of an assessment based on net business income. It was *that* feature—and the consequent loss of potential revenue from the ORS 701.015 "passport" license—that fueled the enactment of ORS 701.020 "carve-out," which, while explicitly including Portland's scheme within the universe of "business license taxes," excluded Portland from the operation of ORS 701.015—but not ORS 696.365. In addition, as recounted above, the 1987 legislature understood that (a) Portland's licensing scheme was not essentially regulatory in purpose; and (b) businesses that had not timely renewed their licenses could continue to do business in the city, subject only to penalties akin to those imposed for late payment of taxes.

Nothing in the 2008 amendments to the Business License Law altered those essential features. The city still imposes an assessment (now candidly denominated a "tax" rather than a "fee") on a business's net income. The city's alteration of other terminology—*e.g.*, "Certificate of Compliance" instead of "license," *see* PCC 7.02.100 (2008)—is cosmetic, not functional. To be sure, as the city emphasizes, it did eliminate the former requirement that a person pay a fee

and obtain a license *before* being permitted to "do business within the City." *See* PCC 7.02.300 (2008). However, even that change is immaterial relative to the totality of the 1987 legislature's understanding of the fundamental features of the Business License Law.

That is so because, as noted—and as the legislature understood—in 1987, businesses without current licenses were not precluded from doing business within the City of Portland; instead, those who did not renew their licenses could continue to operate and were merely subject to late payment penalties and interest. That has not changed. The elimination of the previous ostensibly precatory requirement merely confirmed that preexisting reality.

The city's 2008 revisions are, for purposes of this dispute, immaterial. Bluntly, by imposing its business income tax on plaintiffs in this case, the city is subjecting plaintiffs to precisely the same harm that the 1987 legislature intended to prevent.

We conclude that the trial court erred in concluding that the city's 2008-amended Business License Law does not impose a "business license tax" within the meaning of ORS 696.365 and ORS 701.015(6)(a), and, for that reason, erred in granting the city's motion for partial summary judgment and denying plaintiffs' cross-motion for partial summary judgment. That, in turn, necessitates a remand for the trial court to consider plaintiffs' claims for damages.

Reversed and remanded.